Turley, J.
delivered the opinion of the court.
There is a question of law;, and a question of fact, presented for the consideration of the court, in this case. The question of law is, whether a will, which has been lost, suppi’essed, or destroyed, can be set up by a decree of a court of chancery.
This question, though not entirely new in this state, has never, as yet, received a full and thorough investigation: It is true, that in the case of Brown et als vs. Brown & wife, 10 Yer. R. 48, it was held, that a court of chancery had jurisdiction to set up a will, which has been spoliated or suppressed, but the *391 question was not examined in the opinion, and the existence' of the jurisdiction was assumed; all that is said upon the subject is, “that the spoliation and suppression of the will having been satisfactorily established, the jurisdiction of a court of chancery to set it up and to decree the legacies, is unquestionable.” This though, 'is a direct • determination of the question, and it being a matter of great importance, that decisions, fixing the jurisdiction of our different courts of justice, should be certain, 'and not subject to fluctuation, in order that suitors may know where to resort for protection to their rights, we would with great reluctance overrule the case, even if we felt constrained by the weight of authority and principle, so to do.
But, we deem it proper under the circumstances, not to rest our decision of the present case, solely upon that of Brown et als vs. Brown & wife, but to examine the principles, upon which we think, the case ought to be determined.
In doing this, we are unfortunately left, as we but too often are, to establish a rule of action by analogy and construction from the jurisprudence of England, a system differing widely from our own, not only in its form and structure, but also in the mode of its execution by its courts of justice.
In deducing the principles as applicable to the question under consideration in this state, by analogy and construction from the English authorities, we have but little hope of maintaining their symmetry unimpaired; but about this, we have the less concern, because it is a mere question of practice, and not of right: and as we are left without law upon the subject, positive and obligatory upon us, we feel that (though not disposed to make any violent alteration of well settled principles) we are at liberty to adopt such a practice, as in our opinion, will best protect the rights of our citizens, and give a speedy and effectual relief against the wrong complained of.
In conducting the examination upon this point, it becomes *392 necessary for us to enquire: 1st. What is the law of England upon it? 2nd. What changes therein have been made necessarily in this country by change of judicial system, and what by statute?
In consideration oí the 1st proposition, it must be borne in mind, that a will of personalty, and a testament of lands, are very different things, proven in different tribunals, subject to different rules of construction, and their execution enforced by different mandates, the one controlled and executed by the canon and civil law, and the other by the common law; the power to make the one, existing from time immemorial, and the other, only from the passage of the statute of wills 32 and 34 H. viii.
Mr. Williams says, on the 1st page of his work on Executors: “Although from the time of the Norman conquest until the passing of the Statute of Wills, 32 and 34 H. viii. a subject of this realm, had, generally speaking, no testamentary power over land, yet the power of making a will of personal property, appears to have existed and continued from the earliest period of our law.”
The probate of wills,,for personalty is, at present of exclusive ecclesiastical jurisdiction, and how it became so, is not difficult to ascertain: that it was not always so, we think may be satisfactorily shown.
Mr. Williams, in his Treatise on Executors, page 157, says: “It appears to have been a subject of much controversy, whether the probate of wills was originally a matter of exclusive ecclesiastical jurisdiction; but whatever may have been the case in earlier times, it is certain that at this day, the ecclesiastical court is the only court in which, except by special prescription, the validity of wills of personalty can be established or disputed.” The reason of this, is, we think, obvious.
In ancient times, when a man died without making a disposition of his testable goods, the king, as parens patries, having *393 the supreme care to provide for all his subjects, seized the goods of the intestate, to the intent that they should be preserved, and disposed of for the burial of the deceased, the payment of his debts, to advance his wife and children, if he had any, and if not, those of his blood.
This prerogative was exercised by the king, through his ministers of justice, most probably in the county court, where matters of all kinds were determined, Williams’ Exr. 237. No doubt at that time the probate of wills was also had in the county court — for inasmuch as the king, by virtue of his prerogative, was entitled to administer through the court the effects of all intestates, it would be required that wills should be proven in the court, in order that it might be known when he was ousted of this prerogative, by a will, and that no fraud should be perpetrated upon it, by setting up a false and suppositious will.
Afterwards, the crown in favor of the church, invested the prelates with this branch of the prerogative, which they so grossly abused, that it become necessary to enact various statutes to compel them to disgorge the effects of intestates, seized by them, under this branch of the prerogative and appropriated to their own use.
History informs us how jealous these prelates were at all times of the interference of-the temporal courts in their affairs, •whether spiritual or temporal, that they never permitted, and again and again involved the country in serious conflicts, in asserting the right to have all matters concerning the clergy adjudicated in their own courts, and without appeal, except to Rome.
It then cannot be a matter of much doubt, that after they became invested with the prerogative of administering the effects of intestates, they would do so, through the spiritual courts, and that they deprived the county courts of the juris *394 diction exercised previously thereon, and that they also, with a view of protecting the enjoyment of this prerogative, drew from the county courts the probate of wills, and vested it likewise in the ecclesiastical courts.
The same feelings, would of course, at all times, cause them to watch with assiduity any attempt on the part of the temporal courts to assume jurisdiction upon this subject: and hence, the principle which is now so well established in England, that the ecclesiastical court is the only court in which (except by special prescription) the validity of wills of personalty can be established or disputed.
But the ecclesiastics had nothing to gain in the case of intestacy, as to real estate; there was no administration to be granted upon it; it descended to the heir at law; and the barons of England, with their innumerable feudal prerogatives on the lands of minors, would never have submitted them to the tender care of the priests: Hence the probate of testaments of land has never been allowed to the ecclesiastical courts, but has been strictly retained by the temporal courts.
The ecclesiastical courts have no jurisdiction over wills of land only; therefore, if they attempt to proceed in proving them by compulsion, a prohibition lies. Powell on Devises, 626. Formerly a prohibition was granted absolutely where lands and chattels were disposed of by the same will; after-wards it was granted only as to the lands. But now it does not go as to either, for where a will is concerning lands and goods, and is/one entire will, it shall be proved in the spiritual court, to enable the executor to sue for debts, which otherwise might be lost, and to expedite the payment of legacies, which if it were not so, might be longer delayed, and the will consequently unperformed. Besides, as to granting prohibition quoad the land, it is vain; for the probate of the will for the land, cannot prejudice the heir, because it is no evidence at common *395 law, it being as to lands, coram nonjudice. Powel on Devises, 626; 3 Salk 22; 2 Ves. Jr. 230; Cro. Car. 395; Williams on Ex’r. 216. So muck for the probate of wills and testaments in England, where they are in existence, and' can be produced.
But let us see how it is, where they have been lost, or suppressed, or destroyed. It would be very clear upon the principles already stated, that they could not be set up as to realty in the ecclesiastical courts, for this would be to permit them to do without the will, what they could not do with it. But in relation to personalty, the rule is different.
For it is laid down by Swinburne, “that if a testament be made in writing, and, afterwards lost by some casualty, if there be two unexceptionable,witnesses who did see and read the testament written, and do remenlber the contents thereof, these two witnesses so deposing to the tenor of the will, are sufficient for the proof in form of law. In which case, the court will grant probate of the will, as contained in the depositions of the witnesses. Swin. 2 s. Pt. 14, pl. 4, and Mr. Williams saysj page 209 of his Work on Ex’r, “that at this day it is quite clear, that the contents or substance of a testamentary instrument may be thus established, though the instrument itself cannot be produced, upon satisfactory proof being given, that the instrument was duly made by the testator, and was not revoked by him, but where allegations of this sort are made, they must be supported by the clearest and most stringent evidence.”
From these authorities, it is clear, that a lost, destroyed, or suppressed will, for personalty, may. be set up in the spiritual courts, provided a proper case be made out, upon the clearest and most stringent evidence; but do they prove, that a court of chancery may not, in such case, also give relief? Most assuredly not. And though we are by no means Satisfied, that the court of chancery in England can give relief in such case, yet we are not prepared to say, it cannot. The jurisdiction *396 of the court in cases of a similar character, is so well fixed, and it is so appropriate a tribunal for such relief, that we have no hesitation in saying, that if it do not exist, it is because of the jealousy entertained of the interference of that court, by the ecclesiastical courts, and not because there is not a fitness of things in entertaining the jurisdiction. Indeed, we have been able to find no case, in which it has been held, not to exist. It is decided by that great luminary of equity learning, lord Hardwicke,in the case of Tupper vs. Phipps, 3d Atkins, 360, “that if a will be destroyed, or concealed by the executor, if it is proven plainly, a legatee may go to a court of equity for a decree upon the head of spoliation or suppression; although the general rule is, to cite the exécutor into the ecclesiastical court.”
Now, what is to be found in the books against this authority? The principle is established by a train of decisions, that a court of equity will not set a will aside upon the suggestion of fraud, or imposition in making the will; then it is not his will, and that is a question of fact. Powell on Devises, 626. And this is all that Mr. Story is able to make out of the decisions, after an elaborate review of them in note 1, to his Chapter on actual or positive fraud, in the last edition of his work on Equity Jurisprudence. For he' says: “whether a court of equity could interpose and relieve against fraud practised in the obtaining a will, appears to have been formerly a point of considerable doubt; in some cases we find the court of chancery distinctly asserting its jurisdiction. But since the cases of Kenrich vs. Brownly, 3 Brown’s Par. Cas. 358, and Webb vs. Claverden, 2d Atk. 424, it appears to have been settled, that a will cannot be set aside for fraud or imposition, because it may be set aside for that cause in the ecclesiastical court, for in such a case the animus testamli is wanting and it cannot be considered as a will.” But he has produced no case which holds, that *397 a suppressed, lost, or destroyed will may not be set up in a court of chancery. And, indeed, although a will cannot he set aside in chancery for fraud or imposition in its procurement, yet it is laid down in Powell on Devises, 630, and well sustained by authority, “that there is a material distinction between a court of equity taking upon itself to set aside a will on account of fraud, &c., in obtaining or making it, and its taking from the party the benefit of a will, which he procured to be made on a confidence, that binds the conscience of the devisee, the breach of which confidence, is considered in courts of equity as fraudulent. For this is a ground of equity, distinct from that, over the will itself; the. existence of which is not in such case controverted, as it would be, were they to decide upon questions of fraud, sanity, forgery, or the like, in either of which cases, it is no will. In the former case, equity does not set aside the will, but decrees the devisee to hold for the benefit of the party agrieved.” So that all the cases, in which a court of chancery is prohibited from acting, are, where an attempt is made to set aside the will, and not to set it up.
But, be this as it may, in relation to wills for personalty, which have been lost, suppressed, or destroyed, there is no question, but that the court of chancery in England has the jurisdiction, in such case to set up a will for realty. It cannot be set up any where else — it is a muniment of title, and must be produced on' a trial at law, which cannot be done, if it be not in existence. It cannot, as we have seen, be set up in the ecclesiastical courts, for they had no jurisdiction of such will, and, a probate of it there, is coram non judice. Then, if it cannot be set up in the court of chancery, the de-visee must loose his lands.
It is said in Powell on Devises, 642, to be usual, where a title depends on a will, to prove it in chancery against the heir, and in the case of Haynes vs. Haynes, 2d Vernon 441, it was *398 held, “that where an uncle, having devised his real estate to distant relations, and disinherited his nephew, and heir at, law, and a younger brother of the heir at law, at the funeral snatched the will out of the hands of the executor, and tore it into small pieces, and most of the pieces, particularly, those, wherein the devise of the lands was, were picked up and joined together again. It was decreed on bill to have the will established, the devisees should hold, and enjoy against the heir, and, that he should convey, although there was no proof, that the heir directed the tearing of the will.” Powell on Devises 589.
Prom this hasty and imperfect view of this subject, it will be seen, that in England, the pirobate of wills for personalty, is confined to the ecclesiastical courts. That the probate of wills for realty, is confined to the courts of law, when brought forward as a muniment of title, or to the chancery court where it is sought to be proven against the heir. That where a will for personalty is lost, suppressed, or destroyed, it may upon clear and stringent proof be set up in the ecclesiastical courts — and, that it is doubtful, whether it may not be in the chancery court. But that a will for realty, which is lost, suppressed, or destroyed, can only be set up in the chancery court.
Let us, in the 2d place, enquire, what changes have been effected, upon this subject in this State. We have no ecclesiastical courts, no jealousy of conflicting jurisdictions. The county courts have to a certain extent, been substituted for the ecclesiastical. The probate of wills, both for the real and personal property has been given to them by statute. But no other powers of the ecclesiastical courts, have been devolved upon the county courts, save those expressly given by statute. The power to receive probates of wills in existence, does not necessarily confer the power to set up wills, which have been *399 lost, suppressed, or destroyed, if they have it at all, they must have it, in cases of wills for realty as well as personalty, a snore extensive jurisdiction upon the subject, than belongs to the ecclesiastical courts of England. This power, if it exist, must be by implication, for it is not expressly given: if there were no other place, where a will, under such circumstances could be set up, it would be necessary to insist upon its existence by implication, but, where there is a tribunal, viz: the court of chancery, where such relief can be much more effectually given, there is no reason for insisting on it. But, on the contrary, there is in our opinion, every reason, for denying it.
There is no similarity between the county courts of our state, and the ecclesiastical courts of England, in their facilities for giving relief in such cases. The ecclesiastical courts, are at all times filled with judges of the highest skill and ability — there are always in attendance, the most learned doctors in the common and civil law, and a machinery is possessed by .them equal perhaps to any in the world for the investigation and elucidation of doubtful and conflicting facts-. Not so, with our county courts; the judges are men of no skill in law, entirely disqualified by their vocations and pursuits, from the patient and tqdious investigation of facts, necessary to be ascertained for the purpose of setting up a will, either for realty or personalty, which has been lost, or suppressed, or destroyed by fraud or accident.
The jurisdiction for this purpose, ought not to be vested in those tribunals. The legislature has felt this so strongly, that it has taken from them the right to try an issue of devasavit vel ■non. How ridiculous then, would it be, to leave with them, the more difficult and important power to set up wills, by parol proof, both for real and personal property. Such jurisdiction is not given by statute, and we will not give it by implication.
*400 We therefore think, that in any case, where a will has been lost, or destroj ed, or suppressed, either by accident or fraud, that it can only be set up in a court of chancery in this State, however it may be done elsewhere. 2nd. As to the question of fact, which is presented for consideration, and which is whéther the testimony adduced, is sufficiently specific and certain to set up the will, which is alledged in this case to have been suppressed and destroyed, we can have no doubt.
The proof as to the contents of the paper sought to be set up as the will is clear and explicit. It also shows, beyond a doubt, that it was legally executed as a will, that the testator was of a sound and disposing mind at the time of its execution, and that it has been surreptitiously destroyed.
We are therefore of opinion, that it be set up as the will of William Matlock, deceased, and that the same be certified to the county court of Davidson for registration and administration.
FINAL DECREE.
This cause was heard before the Honorable Nathan Green, William B. Turley and Rober J. McKinney, Judges of the Supreme Court on the 7th day of January, 1849, upon the transcript of the record of the chancery court at Franklin from which this cause came by appeal; when it appeared to the court that in the month of February, 1845, William Matlock died in Davidson county, where he had resided, that in the year 1843, the said William made, and duly executed a paper writing, his last will and testament, which was signed by him, and to which Edward H. East and Robert Buchanan became subscribing witnesses, that by said paper writing, the said William Matlock disposed or purported to dispose of all his estate real and personal in the manner set forth in a paper *401 writing marked A, exhibited in the record with the deposition of Edward H. East, with the exception that it provided that, that portion of his estate left to the children of Benjamin Mat-lock should be subject to a life eslate in their mother, the widow of the said Benjamin. It further appeared that this paper writing remained in the possession of the said William Mat-lock, or that he supposed and believed that it remained in his possession, unrevoked and uncancelled until his death, but that very soon after the death of said William Matlock, diligent search was'made for said paper writing in such places as it might have been expected to have been found, but that the same could not be found; whereupon and upon the facts and • circumstances developed in this cause in the proof, the court is of opinion that the said paper writing was suppressed or destroyed by some person without the authority of said William Matlock, or that the same was lost or mislaid without said William’s knowledge so that the same could not be produced for probate in the county court, and the court being further of opinion that in such a case a court of chancery has jurisdiction to set up and establish said paper writing as the last will and testament of the said William Matlock, and that the same was the last will and testament of said William Mat-lock; the court doth thereupon declare that said paper writing was the last will and testament of the said William Matlock and that the same was in substance and effect as follows, viz: I, William Matlock, of the county of Davidson and State of Tennessee, being of sound mind and memoiy do make and publish this my last will and testament. In the first place after my decease, I will that my executors I shall hereafter appoint, to carry into effect this my last will to have my body decently buried, and pay all my just debts; and in the second place I will and bequeath unto my grand-daughter, Margaret Matlock, a negro child by the name of Alsey, about eleven *402 months old, exclusively above all the rest of my children; and in the third place, I will and bequeath unto my daughter Louisa Stanfield, twenty-five cents; and in the fourth place, I will unto my daughter, Mary Stuart, twenty-five cents which is all I wish them to have of my estate; and in the fifth place, I will that all my land that I own, and the balance of my negroes be equally divided between Nicholas Matlock, John Matlock, Gabriel Matlock, James Matlock, Simpson Matlock and Sarah Hartman and Benjamin Matlock’s heirs to have one child’s share, subject to a life estate, however in the same in favor of the widow of said Benjamin Matlock, and that Gabriel Mat-lock and Margaret Matlock, my two grand children have an equal share with these I have given my land and the balance of my negroes to, and I also will unto my sons and to Benjamin Matlock’s heirs and to Gabriel Matlock, and Margaret Mat-lock, my two grand children which is the two I had mentioned heretofore, one equal share of all my household and kitchen furniture and stock of all kinds and all grain, fodder and every thing belonging to me at the time of my death;and in the last place 1 appoint John Matlock and Simpson Matlock, my two sons, my executors to carry into effect this my last will and testament. As witness whereof, I have hereto set my hand and seal, this 25th day of April in the year of our Lord, one thous- and, eight hundred and forty-three; which was signed by said William Matlock, and published by him in the presence of said East and Buchanan whob ecame subscribing witnesses thereto. It is therefore ordered, adjudged, and decreed, that the said paper writing set forth as aforesaid, be set up and established as the last will and testament of William Matlock, deceased, and that the same be certified by the clerk of this court to the county court of Davidson, there tobe proceeded on and under as the last will and testament of the said William Matlock, deceased, and that said executors be allowed to be qualified as *403 such under said will, or in case they should fail so to become qualified that such other person as may by law be allowed to administer on said estate of said William Matlock with the will annexed. And it is further ordered that all the costs of this cause be paid out of said William Matlock’s estate.